# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2216

SPRINT SPECTRUM L.P.,

*Plaintiff-Appellant,*

v.

THE CITY OF CARMEL, INDIANA,
THE BOARD OF ZONING APPEALS FOR
THE CITY OF CARMEL AND CLAY TOWNSHIP,
and MICHAEL P. HOLLIBAUGH, in his capacity as
Director of the Department of Community Services,
Carmel, Indiana,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 02-1133—**John Daniel Tinder**, *Judge.*

———————

ARGUED DECEMBER 8, 2003—DECIDED MARCH 22, 2004

———————

Before DIANE P. WOOD, EVANS and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* One section of the historical Telecommunications Act of 1996 gives cellular telephone service providers the right to challenge local zoning decisions in federal court. 47 U.S.C. § 332(c)(7)(B)(v). While on its face a simple notion, "this statute fairly bristles with

potential issues . . . ." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2nd Cir. 1999). Our case today concerns one of those issues—when is a land use decision a "final action" in order to create federal subject matter jurisdiction. Specifically, we must examine whether the Act modifies the traditional analysis, enunciated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), for determining when a complaint challenging a local land use decision is ripe for federal adjudication.

In 2001, Sprint, a nationwide provider of wireless telephone services, sought to improve its service in the Indianapolis area. In order to avoid the need to build its own antenna tower, Sprint entered into a lease with Dr. Edwin Zamber, a city of Carmel (Indiana) resident, to place an antenna on his property. Carmel is just a stone's throw north of Indianapolis, and Zamber already had an existing 135-foot-high ham radio tower on his property which met Sprint's technical criteria.

Sprint applied to Carmel's Department of Community Services for an improvement location permit, which the city issued. The permit allowed Sprint to install special low-profile antennas on the sides of Zamber's existing tower, as well as to construct a ground-level equipment shelter. Richard Deer, a neighboring property owner, took exception to the plan and appealed the issuance of the permit to the Carmel/Clay (Township) Board of Zoning Appeals (BZA). Deer alleged that the proposed Sprint antenna was not a permitted use for residential districts under the existing zoning ordinance and that a special use permit, or variance, was required before plans for the tower could proceed.

Shortly after Sprint began constructing the antenna, the Carmel building commissioner issued a stop work order on the project, and Michael Hollibaugh, director of the Department of Community Services, sent Sprint a letter revoking

its permit. Hollibaugh stated that, because Sprint was installing an access road at the Zamber residence, there needed to be a subdivision and primary plat amendment in order to validate the new access easement, which had to be approved by another agency, the Plan Commission. Sprint appealed to the BZA, arguing that the local ordinances did not require subdivision plat approvals.

The BZA initially dismissed Sprint's subdivision appeal as untimely, a decision that was reversed by a state court. Subsequently, the BZA heard both Sprint's subdivision appeal and the zoning appeal. After multiple public hearings, the BZA upheld Deer's objection. It found that the "use for which the [improvement location permit] was granted (a commercial antenna and unstaffed, unoccupied commercial radio equipment shelter) is not a Permitted Use under the S-1 Residential District and related sections of the Camel/Clay Zoning Ordinance." As a result, Sprint was required to seek a special use permit. Similarly, the BZA rejected Sprint's subdivision appeal, holding that Sprint needed to seek subdivision plat approval from the Plan Commission.

Sprint responded to this action with a complaint in federal court seeking injunctive, declaratory, mandamus, and other relief. Among other claims, Sprint alleged violations of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B), arguing that the BZA's decisions were not supported by substantial evidence and unreasonably discriminated against Sprint. Specifically, Sprint argued, the local zoning ordinances do not require it to seek a special use permit or subdivision plat approval. The district court granted the defendants' Rule 12(b)(1) motion and dismissed the case for lack of subject matter jurisdiction. Relying on *Williamson County*, the court concluded that because Sprint could still apply for a special use permit, the BZA had not yet made a final decision and the case was not ripe for federal court

review. Sprint appeals,[1] arguing that the court's reliance on *Williamson County* was misplaced, since the Act modified the relationship between local zoning boards and the federal courts.

We review the court's grant of the Rule 12(b)(1) motion *de novo*, accepting the complaint's well-pleaded factual allegations as true and drawing reasonable inferences from those allegations in Sprint's favor. However, "[w]e presume that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotations marks and citations omitted). It is Sprint's responsibility to clearly allege facts that invoke federal court jurisdiction.

In *Aegerter v. City of Delafield, Wis.*, 174 F.3d 886 (7th Cir. 1999), we examined the relationship between state and local government's traditional land use power and the Telecommunications Act:

> The Act empowers state and local governments to regulate the placement of facilities for personal wireless services, but their authority is not unfettered. They must now support any decision to deny certain requests for those facilities with a written opinion that is based on substantial evidence in a written record, and they may not "unreasonably discriminate among providers of functionally equivalent services." *See* 47 U.S.C. § 332(c)(7)(B)(iii) and (B)(i)(I).

*Id.* at 887-88.

To enforce these provisions, Congress provided that an action can be brought in "any court of competent jurisdiction" by "[a]ny person adversely affected *by any final*

---

[1] Sprint also raised claims under the Fifth and Fourteenth Amendments to the Constitution. It does not appeal the district court's decision that those claims were not ripe.

*action* or failure by a State or local government or any instrumentality thereof that is inconsistent with [§ 332(c)(7)] . . . ." 47 U.S.C. § 332(c)(7)(B)(v) (emphasis added). This case concerns whether the decisions by the BZA regarding Sprint's efforts to construct an antenna constitute a "final action" within the meaning of that provision.[2]

In interpreting the phrase "final action," we emphasize that Congress does not write statutes in a vacuum. For one thing, it is guided by prior judicial decisions, and so it is well-recognized that "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. N.J. Dep't of E.P.*, 474 U.S. 494, 501 (1986) (internal citation omitted). *See also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 813 (1989) ("When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts."). Therefore, prior to examining the Telecommunications Act, we begin with the traditional ripeness requirements for challenges to local land use decisions.

It is well-established that the existence of a case and controversy is a prerequisite for the exercise of federal

---

[2] Significantly, a BZA is the highest administrative authority under Indiana law to hear appeals of decisions under local zoning ordinances. Ind. Cod. § 35-7-4-918.1. Indiana law does, however, provide for review of BZA decisions through the issuance of a writ of certiorari by the circuit or superior court of the county in which the affected premises are located. Ind. Code § 36-7-4-1003. Sprint has not done so. However, the Telecommunications Act does not require the exhaustion of all state judicial remedies before bringing suit in federal court. *See AT&T Wireless PCS, Inc. v. Town of Porter*, 203 F. Supp. 2d 985, 989 (N.D. Ind. 2002).

judicial power under Article III. One important element of the "case" or "controversy" is satisfying the ripeness doctrine, *see Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (stating that the doctrine derives from both Article III and from prudential reasons for refusing to exercise jurisdiction), which determines when a party may go to court. Ripeness is, essentially, a question of timing. *See Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). The doctrine's basic rationale "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Based on these principles, the Supreme Court has adopted specific ripeness requirements for cases challenging land use decisions. As the Court held in *Williamson County*, zoning authorities must be given an opportunity to "arrive[ ] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question" before its owner has a ripe challenge. *Williamson County*, 473 U.S. at 191. The Court has further delineated what constitutes such a final decision. In *Williamson County* it held that the plaintiff's taking and due process claims were not ripe because it did not seek a variance. *Id.* at 193-94. In *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351-52, the plaintiff's taking claim was premature because, even though a planning commission rejected the plaintiff's development plan, the plaintiff failed to submit less intensive plans. With these two cases, the Supreme Court "erected imposing barriers . . . to guard against the federal courts becoming the Grand Mufti of local zoning boards." *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989).

Noticeably, with regard to challenges to land use decisions, "[t]his Circuit has read *Williamson* broadly . . . ." *Forseth v. Village of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000). The one significant exception involves "*bona fide* equal protection claims . . . ." *Id.* However, to demonstrate an equal protection claim in the land use context, the claim must involve a fundamental right or suspect class, or the plaintiff must demonstrate "governmental action wholly impossible to relate to legitimate governmental objectives." *Id.* at 371 (internal citations omitted). For example, the claim must be based on "the malicious conduct of a governmental agent, in other words, conduct that evidences a 'spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective[.]' " *Id.* at 371 (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). Sprint does not fall within this limited exception to *Williamson County*. *Cf. Forseth*, 199 F.3d at 371 (president of the village board denied plaintiff's equal protection under the law when he conditioned approval of development plan on his receipt of "significant personal pecuniary gain").

With this background, we turn to the Telecommunications Act. As we have just discussed, there is a specific ripeness doctrine for challenges to land use decisions, and we see no significant difference simply because Sprint's claim arises from a statute rather than the Constitution. Therefore, in analyzing the Act we focus on those cases rather than more general ripeness standards, *see, e.g., Abbott Labs.*, 387 U.S. at 148, or requirements arising from other statutes, *see, e.g., Bavido v. Apfel*, 215 F.3d 743, 748 (7th Cir. 2000) (discussing exhaustion requirement in Privacy Act, 5 U.S.C. § 552(a)(g)(i ), relied on by Sprint). Nevertheless, Sprint argues that *Williamson County* should not be read into the Telecommunications Act. To do so, Sprint contends, "would create too many time-consuming procedural hurdles," which would defeat the Act's purpose—to encourage the "rapid deployment" of wireless communication. 47 U.S.C.

§ 309(j)(3)(A). Congress specifically enumerated this stated purpose in three provisions of the Act. First, the Act requires local authorities to act on requests to "place, construct, or modify personal wireless service facilities within a reasonable period of time . . . ." 47 U.S.C. § 332(c)(7)(B)(ii). Congress, moreover, enacted a 30-day limitations period in which personal wireless service providers are to file claims under the Act after there has been final action. *Id.* at § 332(c)(7)(B)(v). Finally, Congress directed federal courts to hear such claims on "an expedited basis." *Id.* Based on these provisions, Sprint argues that the term "final action" under § 332(c)(7)(B) only requires that a service provider "obtain a definitive ruling from the local government solely on the issues presented to the local authorities." We disagree. Examining both the language of the Act as well as its legislative history, we do not believe that Congress intended to modify the traditional standard for determining whether a land use dispute is ripe for federal adjudication.

To begin, although creating a federal cause of action, Congress explicitly ensured that the Act would not intrude upon the traditional authority of local governments over land use matters. H.R. Conf. Rep. No. 104-458, at 207-08 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 222. As codified, § 332(c)(7) is entitled "Preservation of local zoning authority." 47 U.S.C. § 332(c)(7). That section expressly states that "[e]xcept as provided in this paragraph, nothing in [the] Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." *Id.* at § 332(c)(7)(A). Indeed, the history behind this provision is significant. As drafted in the House of Representatives, the Act would have allowed the FCC total federal preemption of state authority to regulate tower siting. H.R. Conf. Rep. No. 104-458, at 207 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 221-22. The

Conference Committee, however, rejected this approach, seeking to leave zoning authority in the hands of state and local governments. As the Conference Committee explained: "The conference agreement creates a new [§ 332(c)(7)] which prevents [FCC] preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement." *Id.*

Other portions of the Act further buttress the conclusion that Congress did not intend to modify the traditional ripeness requirements for challenging local land use decisions. For example, under *Williamson County* a property owner must exhaust all available state remedies for compensation prior to bringing a taking claim to federal court. *Williamson County*, 473 U.S. at 193-94. Congress, however, explicitly modified this requirement. As Congress noted, the term "final action" means "final administrative action at the State or local government level so that a party can commence action under the [Act] rather than waiting for the exhaustion of any independent State court remedy otherwise required. H.R. Conf. Rep. No. 104-458, at 9 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 223. *See, e.g., AT&T Wireless PCS, Inc. v. Town of Porter*, 203 F. Supp. 2d 985, 989 (N.D. Ind. 2002); *Laurence Wolf Capital Mgmt. Trust v. City of Ferndale*, 176 F. Supp. 2d 725, 727 (E.D. Mich. 2000). This exercise clearly teaches that Congress was aware of *Williamson County* and knew how to modify its holding when that is what it wanted to do. Absent similar explicit language, in either the Act itself or its legislative history, we will not similarly presume that Congress intended to modify Supreme Court precedent with regard to when a challenge to a local land use decision is ripe for consideration in a federal court.

Thus, since we hold that the Act did not modify the traditional analysis regarding whether a land use claim is

ripe, we analyze Sprint's complaint under the standards enunciated in *Williamson County*. In doing so, we agree with the district court that Sprint's complaint is not yet ripe for federal judicial review. The BZA's decisions do not completely foreclose Sprint from establishing wireless telecommunications facilities at the Zamber site. In fact, those decisions merely map a procedural route that Sprint must take in order to proceed with its project. It must submit a plan to the commission and apply for a special use permit, neither one of which Sprint has done. Indeed, until Sprint is told definitely whether or not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3532 (In gauging the fitness of the issues in a case for judicial resolution, courts are centrally concerned with "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."). The possibility remains that the city of Carmel will still approve Sprint's project. As the Supreme Court has recognized, local zoning authorities are flexible institutions that may give back with one hand what they have taken with the other. *MacDonald*, 477 U.S. at 350. *See also Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738 (1997) (*Williamson County* "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer."). If that is indeed the outcome, there would be no case or controversy to adjudicate because the BZA's action would be favorable to Sprint. Although Sprint at some point might have a mature claim, for now it must allow the local authorities to act with finality before pursuing a claim in federal court.

This case epitomizes the rationale behind the ripeness doctrine. Sprint argues, for example, that it would be futile

to go back to the zoning board because it is not eligible for a special use permit or subdivision plat approval. These are precisely the types of issues that should be presented first to the local land use authority, which has a better understanding of the local ordinances. Sprint contends, moreover, that returning to the zoning board prior to seeking litigation would involve "impracticalities, time delays, expense and other inefficiencies." Such harm is not, however, sufficiently strong to outweigh the unfitness for review embodied in the ripeness doctrine. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998) ("The ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs . . . .").

Finally, Sprint contends that requiring it to apply for a variance would estop it from arguing in the future that it was entitled to the location improvement permit as a matter of right. Indiana courts, however, have not so held. *See, e.g., Metropolitan Bd. of Zoning Appeals v. Avis*, 575 N.E.2d 33, 37 (Ind. App. 1991) (party requesting zoning variance is not estopped from later arguing the variance was not necessary); *Metropolitan Dev. Comm'n of Marion County v. Hari*, 505 N.E.2d 116, 120 (Ind. App. 1987) (petitioners' variance request did not preclude them from claiming in litigation that their properties came within the nonconforming use exception to the zoning ordinance). Furthermore, the City of Carmel concedes that Sprint has preserved its right to challenge the plat and the special use requirement.

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*